IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

LYONS STATE BANK,

        Plaintiff,

    vs.                       **Case No. 09-4060-RDR**

BRACHT FEEDYARDS, INC.
and EDWARD BRACHT,

        Defendants.

---

**MEMORANDUM AND ORDER**

Joseph and Roberta Donohue had a cattle business in Anderson County, Kansas which apparently failed. Litigation has ensued in state court, bankruptcy court and this court in Kansas.

Plaintiff is a central Kansas bank which had a banking relationship with the Donohues. This case was originally filed in state court. It was removed to federal court, where plaintiff filed an amended complaint. Plaintiff alleges the tort of conversion against two eastern Nebraska defendants who operate a cattle feeding facility there and who engaged in cattle transactions with the Donohues. This case is before the court upon defendants' motion to dismiss or, in the alternative, to transfer venue.[1] Defendants claim that this court lacks personal

---

[1] Also pending is defendants' motion for leave to file the supplemental declaration of Edward B. Bracht (Doc. No. 20) in support of defendants' motion to dismiss. The court shall grant this motion. While plaintiff's objection to the motion has some validity, the court does not believe the supplemental document causes undue prejudice to plaintiff.

jurisdiction over defendants and that a transfer of venue to
Nebraska is warranted.

Factual allegations

The following allegations are taken directly from the amended
complaint:

> Plaintiff is a Kansas banking corporation located in
> Lyons, Kansas. Non-parties Joseph C. Donohue and Roberta
> L. Donohue of Greeley, Kansas executed a promissory note
> in favor of plaintiff Lyons State Bank in the amount of
> $7,625,000.00 with a maturity date of November 21, 2008.
> As security for the note, the Donohues executed a
> commercial security agreement dated November 21, 2003 in
> all livestock and/or livestock inventory owned or
> acquired. A financial statement was filed with the
> Secretary of State on January 24, 1994 which gave notice
> of the security interest. The Donohues have defaulted on
> the note and have sold collateral without obtaining a
> release of plaintiff's security interest and paying
> plaintiff the proceeds of the sale. Plaintiff has made
> a demand for payment on the note and filed a foreclosure
> of the collateral. The Donohues have placed control and
> possession of the collateral and proceeds from the sale
> of the collateral in the custody of defendants.
>
> Defendant Bracht Feedyards Inc. ("BFI") is a Nebraska
> corporation with its principal place of business in West
> Point, Nebraska. Defendant Edward Bracht is a Nebraska
> resident. BFI feeds cattle for Joseph Donohue under a
> cattle feeding and marketing agreement by which BFI
> finances collateral for Donohue while the collateral is
> in BFI's possession. This business arrangement has gone
> on for several years.
>
> Under the feeding agreement, BFI loaned Donohue funds by
> check. Donohue then repaid BFI $125 per head and entered
> a loan repayment agreement. BFI charged interest to
> Donohue which was repaid along with feed expenses and
> other amounts due, when the cattle were sold to a third
> party. The risk of loss remained with Donohue, and BFI
> was an unsecured creditor, who claimed to be the "owner"
> of Donohue's cattle.
>
> Defendant Bracht also financed Donohue cattle. These

2

were labeled "Joe and Ed cattle."  He would purchase 50%
of the cattle and loan money to Donohue for the remaining
50% of the cattle.  When these cattle were sold, Bracht
would receive the sale proceeds for his 50% of the
cattle, plus compensation for the feed bill, loan and
interest charged as to the other 50% of the cattle.

Defendants have possessed and exercised unauthorized
control over the collateral and proceeds identified in
plaintiff's security agreement with the Donohues and
denied plaintiff the benefit of the security agreement.
This constitutes conversion.

Defendants assert that they conduct no business in Kansas and have had no contacts with the plaintiff bank.  They have accepted cattle from the Donohues under the agreements described by plaintiff in the first amended complaint.  According to defendants, these were cattle "purchases" from the Donohues.  According to plaintiff, defendants loaned money to the Donohues for the purchase and feeding of cattle at defendants' feedlot.  Defendants contend that the cattle purchases were initiated by Joe Donohue or his representatives who would contact BFI by telephone regarding shipments of cattle to be delivered or already en route to BFI in Nebraska.  Transportation of the cattle was arranged by Donohue, according to defendants.  Title in the cattle delivered by Donohue was transferred either to BFI or to defendant Bracht.  Defendants fed and cared for the cattle.  Defendants paid Donohue part or all of the sums remaining after expenses (including the original purchase price, feed, yardage and other expenses) which were deducted from the ultimate sale proceeds of the cattle.  The cattle feeding and marketing agreement between defendants and Joseph

3

Donohue had a choice of law provision calling for the application of Nebraska law.

According to affidavits submitted by plaintiff, Joe Donohue has shipped thousands of head of cattle from Kansas and other states to defendants in Nebraska since 1994 in more than 100 separate transactions.  In return, defendants financed the purchase of cattle shipped to defendants and shared profits from the sale of cattle.  Agreements in connection with these transactions were executed by Joe Donohue in Kansas.

Legal standards

The general standards governing the issue of personal jurisdiction were summarized in Federal Rural Electric Insurance Corp. v. Kootenai Electric Cooperative, 17 F.3d 1302, 1304-05 (10th Cir. 1994):

> The jurisdiction of a district court over a nonresident defendant in a suit based on diversity of citizenship is determined by the law of the forum state. Fed.R.Civ.P. 4(e).  The proper inquiry is, therefore, whether the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state and comports with due process requirements of the Constitution.  Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990), cert. denied, 498 U.S. 1068, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, Volt Delta Resources, Inc. v. Devine, 241 Kan. 775, 740 P.2d 1089, 1092 (1987), we proceed directly to the constitutional issue.
> "Minimum contacts" is the touchstone for our personal jurisdiction analysis.  International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).  A nonresident defendant must have "minimum contacts" with the forum state such that a court may view that defendant as having "purposefully availed" itself of

the protection and benefits of the laws of the forum
state.  <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462,
473-76, 105 S.Ct. 2174, 2182-84, 85 L.Ed.2d 528 (1985).
Once minimum contacts have been established, the court
must ensure that the exercise of jurisdiction "does not
offend 'traditional notions of fair play and substantial
justice.'"  <u>World-Wide Volkswagen Corp. V. Woodson</u>, 444
U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1979)
(quoting <u>International Shoe</u>, 326 U.S. at 316, 66 S.Ct. at
158).

Plaintiff has the burden of establishing the court's personal

jurisdiction over a defendant.  See <u>OMI Holdings v. Royal Ins. Co.</u>,

149 F.3d 1086, 1091 (10th Cir. 1998).  The court may consider the

issue on the basis of facts drawn from a complaint, affidavits and

other written material.  See <u>Behagen v. Amateur Basketball Ass'n</u>,

744 F.2d 731, 733 (10th Cir. 1984) <u>cert. denied</u>, 471 U.S. 1010

(1985).  In the absence of an evidentiary hearing, plaintiff must

make only a prima facie showing of jurisdiction to defeat a motion

to dismiss.  <u>Wenz v. Memery Crystal</u>, 55 F.3d 1503, 1505 (10th Cir.

1995).  If defendant challenges the jurisdictional allegations with

conflicting proof, plaintiff must support the allegations with

competent evidence.  <u>Pytlik v. Professional Resolution, Ltd.</u>, 887

F.2d 1371, 1376 (10th Cir. 1989).  If factual disputes require an

evidentiary hearing or must await a trial on the merits, plaintiff

must then prove the critical jurisdictional facts by a

preponderance of the evidence.  <u>Wempe v. Sunrise Medical HHG, Inc.</u>,

61 F.Supp.2d 1165, 1167 (D.Kan. 1999).

<u>Minimum contacts</u>

Following the Tenth Circuit's often-used approach, we proceed

directly to a minimum contacts analysis.  "Minimum contacts" can be

established in two ways:

> "First, a court may, consistent with due process, assert
> specific jurisdiction over a nonresident defendant 'if
> the defendant has "purposefully directed" his activities
> at residents of the forum, and the litigation results
> from alleged injuries that "arise out of or relate to"
> those activities.'  Burger King, 471 U.S. at 472, 105
> S.Ct. 2174, 85 L.Ed.2d 528 (internal quotations omitted).
> Where a court's exercise of jurisdiction does not
> directly arise from a defendant's forum-related
> activities, the court may nonetheless maintain general
> personal jurisdiction over the defendant based on the
> defendant's general business contacts with the forum
> state.  Helicopteros Nacionales de Colombia v. Hall, 466
> U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)."

AST Sports Science, Inc. v. CLF Distribution LTD., 514 F.3d 1054,

1058 (10th Cir. 2008) (quoting, Benton v. Cameco Corp., 375 F.3d

1070, 1075 (10th Cir. 2004)).  In this case, plaintiff alleges

specific jurisdiction.  Plaintiff claims that defendants'

purposeful conduct of business in Kansas and Nebraska caused

plaintiff financial harm in Kansas.

> Purposeful establishment of minimum contacts assures a
> reasonable expectation in the out-of-state defendant that
> he might be brought into court in the state where he
> sought to do business . . . and invokes the benefits and
> protections of the forum state's laws . . . In turn, the
> purposeful availment requirement also ensures that a
> defendant will not be subject to the laws of a
> jurisdiction solely as a result of random, fortuitous, or
> attenuated contacts, or of the unilateral activity of
> another party or a third person.

Id. at 1057-58 (interior citations and quotations omitted).

The record establishes that defendants purposefully conducted

a long, substantial and continuing series of cattle transactions

6

with Joe Donohue, who operated in Kansas.  Defendants were aware that many of the cattle being purchased or financed came from Kansas.  Defendants sent contractual documents governing the transactions to Kansas for execution.  Lending money to a resident of a forum state for a business project amounts to "purposeful availment."  D.D.J. Development, Ltd. v. N&N International, 761 F.Supp. 758, 761 (D.Colo. 1991).  Paying funds into a forum state has also been considered a relevant contact for the purposes of personal jurisdiction.  Benton v. Cameco Corp., 375 F.3d 1070, 1076-77 (10th Cir. 2004) cert. denied, 544 U.S. 974 (2005) (exchange of money partially in forum state); see also Continental American Corp. v. Camera Controls Corp., 692 F.2d 1309, 1312 (10th Cir. 1982); Federal Deposit Ins. Corp. v. Culver, 640 F.Supp. 725, 727 (D.Kan. 1986).

Defendants contend that this court should follow the holding in Green Country Crude, Inc. v. Avant Petroleum, Inc., 648 F.Supp. 1443 (D.Kan. 1986).  We disagree.  In Green Country, the court held that the exercise of personal jurisdiction in Kansas would be unconstitutional where the defendant's only contacts were mailing contract documents to a Kansas company and calling Kansas with regard to a contract for the delivery of oil.  The contract was negotiated in Texas.  It had a Texas choice of law provision and it called for delivery and payment to be made in Oklahoma.  The contract was in effect for approximately three months.  We believe

7

Green Country can be distinguished from this case primarily because of the long and continuing business relationship defendants had with the Donohues in Kansas.

Plaintiff's claim arises from defendants' continuing business relationship with the Donohues.   It was foreseeable that defendants' activities could lead to a claim of interference with a Kansas entity's interest in cattle.

In sum, plaintiff has made a prima facie showing that defendant has the minimum contacts with Kansas to support the exercise of personal jurisdiction as long as such judicial review does not offend traditional notions of fair play and substantial justice.   See Burger King, 471 U.S. at 473 ("with respect to interstate contractual obligations we have emphasized that parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities") (internal quotation omitted); Benton, 375 F.3d at 1077-78 (minimum contacts found in long-term business relation-ship with uranium broker from the forum state).

Traditional notions of fair play and substantial justice

The court looks at five factors when deciding whether the exercise of personal jurisdiction comports with fair play and substantial justice.   These factors are:   (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute;

8

(3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental social policies.  TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1292 (10th Cir. 2007).  The court also considers the strength of defendant's contacts with the forum state.  Id.

The first factor weighs in favor of defendants.  It would be more costly and inconvenient for defendants to litigate this matter in Kansas than in Nebraska.  Health issues would make it difficult for defendant Edward Bracht to travel from Nebraska to Kansas. However, defendants have participated to some degree in other Kansas litigation relating to the Donohues.  So, the burden of litigating in Kansas does not seem extreme.

The second and third factors weigh in favor of plaintiff.  The State of Kansas has a strong interest in providing a forum for businesses like plaintiff to seek legal redress for injuries.  Id. at 1293 (quoting OMI Holdings, Inc., 149 F.3d at 1096).  Plaintiff also has an interest in litigating in a convenient forum. Plaintiff indicates that most of its witnesses will be from Kansas. In addition, health issues would make travel to Nebraska difficult for Mr. Donohue.

The fourth factor is the interstate judicial system's interest

in obtaining efficient resolution of disputes.   This factor leans
toward plaintiff's side.   Key elements to this analysis are:  "the
location of witnesses, where the wrong underlying the lawsuit
occurred, what forum's substantive law governs the case, and
whether jurisdiction is necessary to prevent piecemeal litigation."
Benton, 375 F.3d at 1080 (quoting OMI Holding, 149 F.3d at 1097).
As mentioned previously, there will be at least modest hardship
involved to someone regardless of whether this case is heard in
Kansas or Nebraska. Defendants' witnesses are from Nebraska.
Defendants' bank in Nebraska may also become involved in this
litigation in some fashion.   Witnesses for plaintiff and witnesses
connected to the Donohues are from Kansas.

Kansas is a better location for this case because Kansas is
where the alleged economic injury was suffered.   For the same
reason, contrary to defendants' contention, Kansas law should
govern plaintiff's conversion claim.   As noted in Doll v. Chicago
Title Ins. Co., 246 F.R.D. 683, 690 (D.Kan. 2007):

> [T]he Court must apply Kansas choice of law rules to
> determine which state's substantive law governs a
> particular claim.  Klaxon [Co. v. Stentor Elec. Mfg. Co.,
> 313 U.S. 487, 496 (1941)] . . . In Kansas, tort actions
> are governed by the law of the state in which the tort
> occurred, that is, the state in which the wrong was felt.
> See Ling v. Jan's Liquors, 237 Kan. 629, 634-35, 703 P.2d
> 731, 735 (1985).   Because the wrong here involves
> financial harm, the Court would look to the state in
> which each class member felt that financial injury . . .

See also, Aerotech Resources, Inc. v. Dodson Aviation, Inc., 191
F.Supp.2d 1209, 1217 (D.Kan. 2002) (Florida law applied to fraud by

10

silence claim where Florida is where financial harm was felt);
Hermelink v. Dynamex Operations East, Inc., 109 F.Supp.2d 1299,
1303-04 (D.Kan. 2000) (Missouri law applied to negligent misrepre-
sentation claim where financial harm was felt in Missouri); Wempe
v. Sunrise Medical HHG, Inc., 61 F.Supp.2d 1165, 1172 n.3 (D.Kan.
1999) (rule applied to misappropriation of trade secrets claim);
Altrutech, Inc. v. Hooper Holmes, Inc., 6 F.Supp.2d 1269, 1276
(D.Kan. 1998) (rule applied to tortious interference claim); St.
Paul Furniture Mfg. Co. v. Bergman, 935 F.Supp. 1180, 1186-87
(D.Kan. 1996) (same); Fusion, Inc. v. Nebraska Aluminum Castings,
Inc., 1997 WL 51227 (D.Kan. 1/23/1997) (Nebraska law would apply to
breach of fiduciary duty counterclaim where alleged financial harm
was felt in Nebraska); King v. Citizens Bank of Warrensburg, 1990
WL 154210 (D.Kan. 9/19/1990) (applying Kansas law to a conversion
action claiming that a truck was illegally repossessed and taken to
Missouri even though security agreement contained choice-of-law
provision indicating that Missouri law would apply).  These cases
and others that follow the same approach are more persuasive to the
court than the case law defendants cite to claim that Nebraska law
is controlling.

Finally, litigating this case in Kansas may not prevent
piecemeal litigation.  But, some efficiencies may be realized since
other litigation involving the Donohues is pending in Kansas.

The fifth factor is states' interest in advancing fundamental

substantive social policies.  This factor does not strongly favor

either party.

    After reviewing all of the relevant factors, the court

concludes that exercising personal jurisdiction over defendant will

not violate traditional notions of fairness and due process.

Therefore, the court finds that plaintiff has made a prima facie

showing of personal jurisdiction over defendants.[2]

    Change of venue

    Defendants claim that a change of venue is proper in this case

under 28 U.S.C. § 1404(a).  This statute provides:

> For the convenience of parties and witnesses, in the
> interest of justice, a district court may transfer any
> civil action to any other district or division where it
> might have been brought.

    Defendants have the burden of proving that the facts weigh

heavily in favor of transfer.  KCJ Corp. v. Kinetic Concepts, Inc.,

18 F.Supp.2d 1212, 1214 (D.Kan. 1998).  Plaintiff's choice of forum

is given great weight and, unless the balance of facts strongly

favors defendants, this court should not disturb plaintiff's forum

choice.   Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).

    The court must consider the following factors:

> [T]he plaintiff's choice of forum, the accessibility of
> witnesses and other sources of proof, including the
> availability of compulsory process to insure attendance
> of witnesses; the cost of making the necessary proof;
> questions as to the enforceability of a judgment if one

---

    [2] We decline to reach plaintiff's claim that jurisdiction is
appropriate under the theory of conspiracy jurisdiction.

is obtained; relative advantages and obstacles to a fair
trial; difficulties that may arise from congested
dockets; the possibility of the existence of questions
arising in the area of conflict of laws; the advantage of
having a local court determine questions of local law;
and, all other considerations of a practical nature that
make a trial easy, expeditious and economical.

Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509,

1516 (10th Cir. 1991) (quoting, Texas Gulf Sulphur Co. v. Ritter,

371 F.2d 145, 147 (10th Cir. 1967)).

Defendants make several arguments to support a transfer of

venue.  The cattle, if alive, are in Nebraska.  Records regarding

the cattle are in Nebraska, although some of the records may have

already been produced for Kansas litigation.  Defendants also claim

that under Nebraska law an agister's lien may apply for the feeding

and care of the cattle, although this appears to contradict

defendants' claim that defendants purchased the cattle from the

Donohues.  Defendants further contend that it could take "weeks" to

enforce a judgment from this court against defendants' assets in

Nebraska.

These arguments do not persuade the court that venue should be

transferred.  The location of what may be a diminishing number of

cattle is not significant to the conduct of the litigation.  There

are relevant records in Kansas and Nebraska.  Uniform statutes

adopted in Kansas and Nebraska are likely applicable to the

enforcement of judgments and litigation of commercial questions.

There is no convincing claim that there are such differences in

13

Kansas and Nebraska law that this court or the parties would be at a significant disadvantage if this case was litigated in this court as opposed to a Nebraska court.

In sum, none of the factors argued by defendants counter the substantial weight that should be afforded to plaintiff's choice of forum.  This court should not transfer venue merely to shift the inconvenience of litigation from one party to the other.  <u>KJC Corp.</u>, 18 F.Supp.2d at 1214.  After considering this and the other points made by both sides, the court shall deny the motion to transfer venue.

<u>Conclusion</u>

For the above-stated reasons, defendants' motion to dismiss or to transfer venue shall be denied.  Defendants' motion for leave to file the supplemental declaration of Edward B. Bracht is granted.

**IT IS SO ORDERED.**

Dated this 21st day of August, 2009 at Topeka, Kansas.


                              s/Richard D. Rogers
                              United States District Judge